UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS JAMES INGRASSIA, ) | |
| ) | |
|     Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:12CV62 JCH |
| ) | |
| KEITH SCHAFER, et al., ) | |
| ) | |
|     Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Keith Schafer, Felix Vincenz, Alan Blake, Jay Englehart, Davinder Hayreh, Kristina Bender, Kaylynn Reed, and Brenda Swift's (collectively "Defendants") Motion to Dismiss, filed April 16, 2012. (ECF No. 10). The motion is fully briefed and ready for disposition.

**BACKGROUND**[1]

Plaintiff Thomas James Ingrassia was civilly committed to the Missouri Sexual Offender Treatment Center, now know as the Missouri Sexual Offender Rehabilitation and Treatment Services facility ("SORTS"), in April, 2001. (Complaint ("Compl."), ¶ 22). Plaintiff escaped from SORTS in October, 2001, and spent two years at-large and five years in the custody of the county jail and the Missouri Department of Corrections ("MDOC"). (Id., ¶¶ 22, 23). On August 8, 2008, Plaintiff was paroled from MDOC, and returned to SORTS to continue his civil commitment. (Id., ¶ 24).

Upon his arrival at the SORTS facility on August 8, 2008, Plaintiff immediately was placed on Special Precautions, Visual One-to-One, defined by SORTS policy S-PC. 270, due to risk of

---

[1] The Court's background section is taken from Plaintiff's Complaint, to which Defendants have not yet filed an answer.

elopement. (Compl., ¶ 25). Under Special Precautions, an employee of SORTS was to follow Plaintiff twenty-four hours a day, and maintain visual contact at all times. (Id.). Plaintiff initially was not permitted to venture outside at all. (Id., ¶ 27).

On August 25, 2008, Defendant Alan Blake wrote an order allowing Plaintiff to go outdoors to the Hoctor yard two times a day, for thirty minutes at a time. (Compl., ¶ 27). Plaintiff was escorted to the Hoctor yard by two SORTS employees, and no other SORTS residents were permitted on the yard while Plaintiff was there. (Id.). Plaintiff complains the Hoctor yard was small, and had no recreation equipment other than a small basketball court. (Id.). Plaintiff filed numerous team requests and facility grievances between August 25, 2008, and March 18, 2009, requesting use of a basketball, kickball, or rubber hand ball, and/or for exercise equipment to be installed in the Hoctor yard. (Id., ¶ 28). Plaintiff further requested to be allowed access to the Blair recreation yard, which he claims is approximately twenty-five times larger than the Hoctor yard. (Id., ¶¶ 28-29). All of Plaintiff's team requests and facility grievances were denied. (Id.).

Between March 18, 2009, and July, 2009, Plaintiff was allowed access to the Blair yard. (Compl., ¶ 31). In July, 2009, however, Plaintiff was placed on Total Ward Restriction ("TWR"), and was restricted from going outdoors at any time.[2] (Id.). Plaintiff's placement on TWR lasted until March 30, 2010, at which time he was allowed to go outside periodically until April 27, 2010. (Id., ¶ 32). Plaintiff was placed back on TWR on April 27, 2010[3], and was not allowed to go outside again until August 30, 2011. (Id., ¶ 33).[4]

---

[2] It is unclear why Plaintiff initially was placed on TWR in July, 2009.

[3] Again, it is unclear why Plaintiff was returned to TWR status on April 27, 2010.

[4] Plaintiff apparently acknowledges his lengthy placement on TWR was due at least in part to his "increased instances of negative and arguably violent behavior." (Compl., ¶ 35). Plaintiff maintains this negative behavior resulted from idleness caused by his inability to go outdoors for exercise and recreation. (Id.).

Plaintiff was permitted outside access beginning August 30, 2011, and was allowed to frequent the Blair yard between September 20, 2011, and October 27, 2011, when his privileges were again revoked. (Compl., ¶¶ 33, 42). Beginning November 30, 2011, Plaintiff was granted access to the outdoors for short "fresh air breaks," and from December 7, 2011, to the time of filing his Complaint, he enjoyed access to exercise and recreation in the Blair yard. (Id., ¶¶ 43, 44).

Plaintiff filed his Complaint in this matter on January 9, 2012, seeking declaratory, injunctive and monetary relief. (ECF No. 1).[5] Plaintiff claims his inability to exercise normally through access to outdoor recreational activities has caused him to suffer physical injury, in that his body has deteriorated due to a lack of appropriate exercise. (Compl., ¶ 38). Plaintiff claims his damages, including emotional and mental injuries, were exacerbated because during this time frame (a) he was recovering from a lumbar disc rupture and disc surgery, and thus would greatly have benefitted from appropriate exercise, and (b) SORTS employees had placed him on severe food restrictions, resulting in a rapid ten percent loss in body weight. (Id., ¶¶ 40-41).

As noted above, Defendants filed their Motion to Dismiss on April 16, 2012, claiming Plaintiff has failed to state a claim upon which relief can be granted. (ECF No. 10).

## STANDARD FOR MOTION TO DISMISS

In ruling on a motion dismiss, the Court must view the allegations in the complaint in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008). The Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). The Complaint's factual allegations must be sufficient "to raise a right to relief

---

[5] Plaintiff states his Complaint is brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Mo.Rev.Stat. § 630.110.1(7). (Compl., PP. 15-16).

above the speculative level," however, and the motion to dismiss must be granted if the Complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) (abrogating the "no set of facts" standard for Fed.R.Civ.P. 12(b)(6) found in Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  Furthermore, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Twombly, 550 U.S. at 555 (pleading offering only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not do)).

## DISCUSSION

### I.     Official Capacity Claims

In their Motion to Dismiss, Defendants first assert Plaintiff's claims against them in their official capacities are barred by the Eleventh Amendment.  (Memorandum in Support of Defendants' Motion to Dismiss Plaintiff's Complaint, PP. 3-4).  Generally, "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment." Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984) (citations omitted).  Furthermore, "Section 1983 does not abrogate the Eleventh Amendment immunity of states and their agencies." Straub v. Correctional Medical Services, 2005 WL 2290408 at *3 (E.D. Mo. Sept. 20, 2005), citing Murphy v. State of Arkansas, 127 F.3d 750, 754 (8th Cir. 1997).

With respect to individual defendants acting in their official capacities, Section 1983 damages claims are barred, "either by the Eleventh Amendment or because they are not 'persons' for § 1983 purposes." Straub, 2005 WL 2290408 at *4, citing Murphy, 127 F.3d at 754.  "However, state

officials acting in their official capacities are § 1983 persons when sued for prospective relief, and the Eleventh Amendment does not bar such relief." Id. (internal quotations and citation omitted).

Upon consideration of the foregoing, the Court finds Plaintiff's claim for monetary damages against Defendants in their official capacities is barred by the Eleventh Amendment. Plaintiff's claim for prospective injunctive relief, however, is not barred. This portion of Defendants' Motion to Dismiss thus will be granted in part.

**II.     Individual Capacity Claims**

As a civilly committed resident of SORTS, Plaintiff retains constitutionally protected liberty interests in essential care items, including adequate exercise. Covington v. Greenwell, 2006 WL 3247215 at *4-5 (E.D. Mo. Nov. 8, 2006), citing Youngberg v. Romeo, 457 U.S. 307, 324 (1982); Kennedy v. Schafer, 71 F.3d 292, 294 (8th Cir. 1995). While Plaintiff does not surrender all constitutional rights by virtue of his lawful detention, however, he "simply does not possess the full range of freedoms of an unincarcerated individual." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

> The United States Supreme Court has held that there must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. Additionally, maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of [detainees]. To accomplish these goals, detention facility administrators should be given wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to...maintain institutional security...and, in the absence of substantial evidence [that the policies and practices are unnecessary], courts should ordinarily defer to their expert judgment in such matters.

Strutton v. Blake, 2006 WL 335715 at *4 (E.D. Mo. Feb. 14, 2006) (internal quotations and citations omitted).

In his Complaint, Plaintiff alleges he has suffered both physical injury, in that his body has deteriorated due to a lack of appropriate exercise, and emotional and mental injuries, as a result of

- 5 -

Defendants' restriction of his access to outdoor recreational activities. "Complaints of lack of exercise in a secured environment constitute a condition of confinement claim." Strutton, 2006 WL 335715 at *7, citing Wilson v. Seiter, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991). In order to prevail on his claim, Plaintiff must show Defendants were deliberately indifferent to his exercise needs. Covington, 2006 WL 3247215 at *5; Wishon v. Gammon, 978 F.2d 446, 448-449 (8th Cir. 1992). "In considering an alleged deprivation of adequate exercise, courts must consider several factors including: (1) the opportunity to be out of the cell[6]; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." Wishon, 978 F.2d at 449 (citations omitted). As noted above, however, Plaintiff's rights must be balanced with Defendants' need to adopt and execute policies and practices necessary to maintain institutional security. Strutton, 2006 WL 335715 at *4; Wishon, 978 F.2d at 449.

Upon consideration the Court will deny this portion of Defendants' Motion to Dismiss, as fact questions remain with respect to the allegations in Plaintiff's Complaint. For example, the Court finds itself unable to evaluate whether Defendants' curtailment of Plaintiff's access to adequate exercise was necessitated by institutional security concerns, because the circumstances underlying Plaintiff's commitment to TWR and denial of outdoor privileges have been fully delineated by neither side. Furthermore, at this time it is unclear to the Court whether, during the time Plaintiff was denied access to outside recreational activities, he was permitted adequate opportunity to exercise on his ward. This information is important, because if Plaintiff's claim is not that he was denied adequate opportunity for exercise entirely, but only that it was not outdoors and there was no gym equipment, "[s]uch a claim fails to state a constitutional violation for deprivation of adequate exercise." Covington, 2006

---

[6] "Courts in the Eighth Circuit have held that at least one hour of exercise outside the cell each day is required in order to comply with the eighth amendment." Covington, 2006 WL 3247215 at *5 (internal quotations and citations omitted).

- 6 -

WL 3247215 at *5. See also Casey-El v. Greenwell, 2005 WL 2298199 at *4 (E.D. Mo. Sept. 21, 2045) ("Plaintiffs do not allege that they are denied adequate opportunity for exercise, only that it is not outdoors. Such claim fails to state a constitutional violation for deprivation of adequate exercise"); Oliver v. Greenwell, 2005 WL 2406015 at *3 (E.D. Mo. Sept. 29, 2005) (same). The Court thus finds it appropriate to permit discovery to continue, in order to flesh out Plaintiff's claims.[7] This portion of Defendants' Motion to Dismiss will therefore be denied.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (ECF No. 10) is **GRANTED** in part and **DENIED** in part, in accordance with the foregoing.

Dated this 18th day of May, 2012.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE

---

[7] Defendants' assertions may more properly be addressed in the context of a Motion for Summary Judgment.

- 7 -