UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| THOMAS JAMES INGRASSIA, ) | |
| ) | |
| Plaintiff(s), ) | |
| ) | |
| vs. ) | Case No. 4:12CV62 JCH |
| ) | |
| KEITH SCHAFER, et al., ) | |
| ) | |
| Defendant(s). ) | |

**MEMORANDUM AND ORDER**

This matter is before the Court on Defendants Keith Schafer, Felix Vincenz, Alan Blake, Jay Englehart, Davinder Hayreh, Kristina Bender, Kaylynn Reed, Brenda Swift, Linda Moll, Scott Jordan, Nancy Amsden, Kevin Fletcher, and Bob Wills' (collectively "Defendants") Motion for Summary Judgment, filed September 25, 2012. (ECF No. 35). The motion is fully briefed and ready for disposition.

**BACKGROUND**[1]

Plaintiff Thomas James Ingrassia was civilly committed to the Missouri Sexual Offender Treatment Center, now know as the Missouri Sexual Offender Rehabilitation and Treatment Services facility ("SORTS"), in April, 2001. (Complaint ("Compl."), ¶ 22). Plaintiff eloped from SORTS in October, 2001, and spent two years at-large and five years in the custody of the county jail and the Missouri Department of Corrections ("MDOC"). (Id., ¶¶ 22, 23). On August 8, 2008, Plaintiff was paroled from MDOC, and returned to SORTS to continue his civil commitment. (Id., ¶ 24).

---

[1] The Court's background section is taken from Plaintiff's Complaint. Defendants dispute many of the facts as presented by Plaintiff, and further provide their own Statement of Uncontroverted Material Facts in support of their Motion for Summary Judgment.

Upon his arrival at the SORTS facility on August 8, 2008, Plaintiff immediately was placed on Special Precautions, Visual One-to-One, defined by SORTS policy S-PC. 270, due to risk of elopement. (Compl., ¶ 25). Under Special Precautions, an employee of SORTS was to follow Plaintiff twenty-four hours a day, and maintain visual contact at all times. (Id.). Plaintiff initially was not permitted to venture outside at all. (Id., ¶ 27).[2]

On August 25, 2008, Defendant Alan Blake wrote an order allowing Plaintiff to go outdoors to the Hoctor yard two times a day, for thirty minutes at a time. (Compl., ¶ 27). Plaintiff was escorted to the Hoctor yard by two SORTS employees, and no other SORTS residents were permitted on the yard while Plaintiff was there. (Id.). Plaintiff complains the Hoctor yard was small, and had no recreation equipment other than a small basketball court. (Id.). Plaintiff filed numerous team requests and facility grievances between August 25, 2008, and March 18, 2009, requesting use of a basketball, kickball, or rubber hand ball, and/or for exercise equipment to be installed in the Hoctor yard. (Id., ¶ 28). Plaintiff further requested to be allowed access to the Blair recreation yard, which he claims is approximately twenty-five times larger than the Hoctor yard. (Id., ¶¶ 28-29). All of Plaintiff's team requests and facility grievances were denied. (Id.).

Between March 18, 2009, and July, 2009, Plaintiff was allowed access to the Blair yard. (Compl., ¶ 31). In July, 2009, however, Plaintiff was placed on Total Ward Restriction ("TWR"), and was restricted from going outdoors at any time. (Id.). Plaintiff's placement on TWR lasted until March 30, 2010, at which time he was allowed to go outside periodically until April 27, 2010. (Id.,

---

[2] Plaintiff does not dispute Defendants' assertion that he often was verbally abusive to his assigned 1:1 staff members and other patients on the ward, claiming only that his actions were appropriate under the circumstances. (See Defendants' Statement of Uncontroverted Material Facts ("Defendants' Facts"), ¶ 11 and Plaintiff's response thereto).

¶ 32). Plaintiff was placed back on TWR on April 27, 2010, and was not allowed to go outside again until August 30, 2011. (Id., ¶¶ 32, 33).[3]

Plaintiff was permitted outside access beginning August 30, 2011, and was allowed to frequent the Blair yard between September 20, 2011, and October 27, 2011, when his privileges were again revoked. (Compl., ¶¶ 33, 42). Beginning November 30, 2011, Plaintiff was granted access to the outdoors for short "fresh air breaks," and from December 7, 2011, to the time of filing his Complaint, he enjoyed access to exercise and recreation in the Blair yard. (Id., ¶¶ 43, 44).

Plaintiff filed his Complaint in this matter on January 9, 2012, seeking declaratory, injunctive and monetary relief. (ECF No. 1).[4] Plaintiff claims his inability to exercise normally through access to outdoor recreational activities has caused him to suffer physical injury, in that his body has deteriorated due to a lack of appropriate exercise. (Compl., ¶ 38). Plaintiff claims his damages, including emotional and mental injuries, were exacerbated because during this time frame (a) he was recovering from a lumbar disc rupture and disc surgery, and thus greatly would have benefitted from appropriate exercise, and (b) SORTS employees had placed him on severe food restrictions, resulting in a rapid ten percent loss in body weight. (Id., ¶¶ 40-41).

As noted above, Defendants filed their Motion for Summary Judgment on September 25, 2012, claiming there exist no genuine issues of material fact, and Defendants are entitled to judgment as a matter of law. (ECF No. 35).

## SUMMARY JUDGMENT STANDARD

---

[3] Plaintiff apparently acknowledges his lengthy placement on TWR was due at least in part to his "increased instances of negative and arguably violent behavior." (Compl., ¶ 35). Plaintiff maintains this negative behavior resulted from idleness caused by his inability to go outdoors for exercise and recreation. (Id.).

[4] Plaintiff states his Complaint is brought pursuant to 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, and Mo.Rev.Stat. § 630.110.1(7). (Compl., PP. 15-16).

The Court may grant a motion for summary judgment if, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The substantive law determines which facts are critical and which are irrelevant. Only disputes over facts that might affect the outcome will properly preclude summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is not proper if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A moving party always bears the burden of informing the Court of the basis of its motion. Celotex, 477 U.S. at 323. Once the moving party discharges this burden, the nonmoving party must set forth specific facts demonstrating that there is a dispute as to a genuine issue of material fact, not the "mere existence of some alleged factual dispute." Fed. R. Civ. P. 56(e); Anderson, 477 U.S. at 247. The nonmoving party may not rest upon mere allegations or denials of its pleadings. Anderson, 477 U.S. at 256.

In passing on a motion for summary judgment, the Court must view the facts in the light most favorable to the nonmoving party, and all justifiable inferences are to be drawn in its favor. Anderson, 477 U.S. at 255. The Court's function is not to weigh the evidence, but to determine whether there is a genuine issue for trial. Id. at 249.

## DISCUSSION

### I. Section 1983 Claim

As noted above, in his Complaint Plaintiff asserts Defendants violated his constitutional rights by restricting his outdoor exercise and recreation privileges. In their Motion for Summary Judgment, Defendants assert this claim is barred by the application of qualified immunity because (1) the alleged

curtailment did not violate Plaintiff's constitutional rights in the first instance; and (2) even if it did, it was not clearly established that the curtailment would violate Plaintiff's constitutional rights.

Under Eighth Circuit law, "[q]ualified immunity protects government officials performing discretionary functions from liability for damages so long as 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Curry v. Crist, 226 F.3d 974, 977 (8th Cir. 2000) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The Court employs a two-part inquiry "to determine whether a lawsuit against a public official alleging a constitutional violation can proceed in the face of an assertion of qualified immunity." Serna v. Goodno, 567 F.3d 944, 951 (8th Cir.) (citing Saucier v. Katz, 533 U.S. 194, 200-01, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001)), cert. denied, 130 S.Ct. 465 (2009).

> First, courts [] consider whether, taken in the light most favorable to the party asserting the injury,....the facts alleged show the [official's] conduct violated a constitutional right.....Second, courts [] ask whether the right was clearly established[5]...

Id. at 951-52 (internal quotation marks and citations omitted). "Unless the answer to both of these questions is yes, the defendants are entitled to qualified immunity." Krout v. Goemmer, 583 F.3d 557, 564 (8th Cir. 2009).

As noted above, with this claim Plaintiff implicates his rights under the Fourteenth Amendment. As a civilly committed resident of SORTS, Plaintiff retains constitutionally protected liberty interests in essential care items, including adequate exercise. See Covington v. Greenwell, 2006 WL 3247215 at *4-5 (E.D. Mo. Nov. 8, 2006) (citing Youngberg v. Romeo, 457 U.S. 307, 324

---

[5] While Saucier set forth the two-part test with a mandatory sequence for analysis, the Supreme Court has since reversed itself and eliminated the mandatory aspect of the sequential analysis. Serna, 567 F.3d at 952 (citing Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, 818, 172 L.Ed.2d 565 (2009)).

(1982); Kennedy v. Schafer, 71 F.3d 292, 294 (8th Cir. 1995)). While Plaintiff does not surrender all constitutional rights by virtue of his lawful detention, however, he "simply does not possess the full range of freedoms of an unincarcerated individual." Bell v. Wolfish, 441 U.S. 520, 546 (1979).

> The United States Supreme Court has held that there must be a mutual accommodation between institutional needs and objectives and the provisions of the Constitution that are of general application. Additionally, maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of [detainees]. To accomplish these goals, detention facility administrators should be given wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to...maintain institutional security...and, in the absence of substantial evidence [that the policies and practices are unnecessary], courts should ordinarily defer to their expert judgment in such matters.

Strutton v. Blake, 2006 WL 335715 at *4 (E.D. Mo. Feb. 14, 2006) (internal quotation marks and citations omitted).

In his Complaint, Plaintiff alleges he has suffered both physical injury, in that his body has deteriorated due to a lack of appropriate exercise, and emotional and mental injuries, as a result of Defendants' restriction of his access to outdoor recreational activities. "Complaints of lack of exercise in a secured environment constitute a condition of confinement claim." Strutton, 2006 WL 335715 at *7 (citing Wilson v. Seiter, 501 U.S. 294, 304-05, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)). In order to prevail on his claim, Plaintiff must show Defendants were deliberately indifferent to his exercise needs. Covington, 2006 WL 3247215 at *5; Wishon v. Gammon, 978 F.2d 446, 448-449 (8th Cir. 1992). "In considering an alleged deprivation of adequate exercise, courts must consider several factors including: (1) the opportunity to be out of the cell; (2) the availability of recreation within the cell; (3) the size of the cell; and (4) the duration of confinement." Wishon, 978 F.2d at 449 (citations omitted). As noted above, however, Plaintiff's rights must be balanced with Defendants' need to adopt and execute policies and practices necessary to maintain institutional security. Strutton, 2006 WL 335715 at *4; Wishon, 978 F.2d at 449.

- 6 -

Upon consideration, the Court finds Defendants are entitled to qualified immunity on Plaintiff's Fourteenth Amendment claim, either because their actions in curtailing his exercise and recreation activities did not violate Plaintiff's constitutional rights, and/or because reasonable officials in Defendants' position would not have understood they were violating Plaintiff's rights. Strutton, 2006 WL 335715 at *4; Wishon, 978 F.2d at 449. With respect to whether the right was violated in the first instance, the Court notes Defendants provide evidence that, during the time Plaintiff was denied access to outside recreational activities, he was permitted adequate opportunity to exercise on his ward. (See Plaintiff's Dep., PP. 55-59). For example, both in his deposition testimony and in response to Defendants' motion, Plaintiff acknowledges that while on TWR, he was able to do sit-ups, pushups, and crunches, as well as jog in place, for exercise. (See, e.g., Defendants' Facts, ¶ 26 and Plaintiff's response thereto; Plaintiff's Dep., P. 27; Bender Affidavit, ¶ 10). Plaintiff further testified during his deposition that when he was forbidden to exercise in his room or in the ward hallway, he was taken to the seclusion room to exercise. (See Plaintiff's Dep., PP. 55-57, 60-61).[6] Finally, Plaintiff admits that when he refused to exercise during his allotted time of 9:00 a.m. to 11:00 a.m. because he preferred to sleep in, Defendants quickly relented and adjusted his exercise schedule. (See Defendants' Facts, ¶¶ 43-46; Plaintiff's Dep., PP. 57-60). These concessions are important, because given that Plaintiff's claim is not that he was denied adequate opportunity for exercise entirely, but only that it was not outdoors and there was no gym equipment, "[s]uch a claim fails to state a constitutional violation for deprivation of adequate exercise." Covington, 2006 WL 3247215 at *5. See also Casey-El v. Greenwell, 2005 WL 2298199 at *4 (E.D. Mo. Sept. 21, 2005) ("Plaintiffs do not allege that they are denied adequate opportunity for exercise, only that it is not outdoors. Such

---

[6] To the extent Plaintiff complains Defendants' actions in allegedly locking him in the seclusion room for hours after he exercised violated his constitutional rights, such claim has not been pled and is not at issue here.

- 7 -

claim fails to state a constitutional violation for deprivation of adequate exercise"); Oliver v. Greenwell, 2005 WL 2406015 at *3 (E.D. Mo. Sept. 29, 2005) (same).  Under these circumstances, the Court finds Defendants' placement of restrictions on Plaintiff's exercise and recreation activities did not violate his constitutional rights, as Plaintiff retained the ability to engage in such activities within the confines of the SORTS facility.

In the alternative, assuming Defendants' curtailment of Plaintiff's exercise and recreation activities did violate his constitutional right, the Court finds such right was not clearly established under the circumstances presented.  "For a right to be deemed clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Serna, 567 F.3d at 952 (internal quotation marks and citations omitted).  "In other words, officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines."  Id. (internal quotation marks and citation omitted).  As noted above, case law establishes that Plaintiff's rights must be balanced with Defendants' need to adopt and execute policies and practices necessary to maintain institutional security. Strutton, 2006 WL 335715 at *4; Wishon, 978 F.2d at 449.  In the instant case, Plaintiff admits he initially was placed on 1:1 visual status due to his risk of elopement.  Furthermore, Defendants provide undisputed evidence that they approved the treatment plan placing Plaintiff on TWR and restricting his activities due to safety concerns, which arose due to Plaintiff's continuing verbal abuse, intimidating behavior, and failure to follow staff directives. (See Englehart Affidavit, ¶¶ 5-12).  Defendants note Plaintiff was given frequent opportunities to modify his behavior in order to regain his outdoor privileges, and that when Plaintiff eventually complied such privileges were in fact restored.  (See Englehart Affidavit, ¶ 15; Bender Affidavit, ¶ 3).  The Court thus finds Defendants' curtailment of Plaintiff's access to adequate exercise was necessitated by institutional security concerns, and so even if the restrictions were

improper, reasonable officials in Defendants' positions would not have understood they were violating Plaintiff's constitutional rights by implementing them. This portion of Defendants' Motion for Summary Judgment must therefore be granted.

## II. Missouri State Law Claim

As noted above, Plaintiff further claims Defendants' actions violated Mo.Rev.Stat. § 630.110.1(7). (Compl., P. 15). This Court previously has held that § 630.110 does not provide for a private cause of action. See Bradford v. Blake, 2006 WL 744307 at *3 (E.D. Mo. Mar. 23, 2006). Defendants' Motion for Summary Judgment on Plaintiff's state law claim must therefore be granted.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment (ECF No. 35) is **GRANTED**, and Plaintiff's claims against Defendants are dismissed with prejudice. An appropriate Judgment will accompany this Memorandum and Order.

Dated this 25th day of January, 2013.

/s/Jean C. Hamilton
UNITED STATES DISTRICT JUDGE